JULIA PENDERGAST *vs.* ERNEST S. LONG.

Essex.   December 12, 1932. — February 21, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence,* Motor vehicle, In use of way.   *Proximate Cause.*

At the trial of an action of tort for personal injuries caused when an automobile in which the plaintiff was riding was overturned after the driver turned off the hard surface on to a soft shoulder of the Newburyport Turnpike to avoid a collision with an automobile which had been driven from an intersecting street by the defendant, there was evidence that at the place of the collision the turnpike was a "through way"; that a "stop sign" was on the intersecting street where the defendant entered the turnpike; that the defendant disregarded the sign, entered the turnpike as the automobile in which the plaintiff was riding approached on the turnpike at a speed of about twenty-five miles per hour, and stopped thereon in such a position that, had the automobile in which the plaintiff was riding not made the turn, there would have been a collision. *Held,* that

(1) A finding of negligence on the part of the defendant was warranted;

(2) It was immaterial that the defendant's automobile did not collide with that in which the plaintiff was riding, if, as could have been found, the overturning was the result of negligence of the defendant.

TORT.   Writ dated July 2, 1929.

In the Superior Court, the action was tried before *J. J. Burns,* J.   Material evidence is described in the opinion.

There was a verdict for the plaintiff in the sum of $4,750. The judge reported the action for determination by this court.

*S. Parsons*, for the defendant.

*J. A. Donovan*, (*J. M. Hargedon* & *F. Bernardin* with him,) for the plaintiff.

CROSBY, J. This is an action of tort to recover for personal injuries received by the plaintiff on August 1, 1928, when an automobile operated by her husband was overturned in an attempt to avoid a collision with an automobile operated by the defendant. The case was submitted to the jury who returned a verdict for the plaintiff. The trial judge reported the case for determination by this court. All the material evidence is contained in the report. The only question of law presented is whether there was any evidence of negligence of the defendant which would have warranted a finding for the plaintiff.

The accident occurred on the Newburyport Turnpike at the corner of Center Street in the town of Danvers in this Commonwealth. The turnpike runs in a northerly and southerly direction, and at the time of the accident had a cement surface eighteen feet wide with a two-foot gravel shoulder on each side. At the northeast corner of Center Street and the turnpike there was an embankment five feet high. There were stop signs on each side of the turnpike on Center Street. The turnpike was a through way having been so designated by the department of public works under the provisions of § 9, inserted in G. L. c. 89 by St. 1926, c. 330, § 2, and amended by St. 1928, c. 357, § 5. Vehicles on Center Street were required to come to a full stop before entering the intersection except when otherwise directed by a police officer, or by a lawful traffic regulating sign, signal or device. G. L. c. 89, § 8, as amended by St. 1926, c. 330, § 1; St. 1928, c. 357, § 4.

G. L. c. 89, § 8, as amended by St. 1926, c. 330, § 1, and St. 1928, c. 357, § 4, provides in part as follows: "Every driver of a motor or other vehicle approaching an intersecting way, as defined in section one of chapter ninety, shall grant the right of way at the point of intersection to

a vehicle approaching from his right, provided that such vehicle is arriving at the point of intersection at approximately the same instant."

The plaintiff's husband testified that at the time of the accident he was accompanied by his wife and children and was driving his automobile along the turnpike in a southerly direction at a speed of between twenty-four and twenty-seven miles an hour; that his wife was on the seat beside him holding a small baby; that as he approached Center Street he was watching the road ahead of him, and when about thirty feet from the corner of Center Street he saw the defendant's automobile coming out of that street; that it seemed as if it were going across the turnpike, but it suddenly stopped; that as soon as he saw this automobile he started to put on his brakes, and the defendant's automobile stopped at a point "away over the line" of the turnpike, and the "rear wheels were just on the line, probably just a little over the line," the "front wheels were . . . on the macadam"; that it "was straight in front of him [the witness]"; that it was impossible for him to turn to the left, as there was another automobile coming down the street. He further testified that he saw the defendant's automobile as it came along Center Street, and that it did not stop until it reached the center of the turnpike; that if he had kept on straight ahead he would have collided with it; that he turned to the right and endeavored to pass the defendant's automobile, and when he did so the right front wheel of his automobile went into soft dirt and it tipped over. There was evidence that as a result of the accident the plaintiff was seriously injured.

The plaintiff testified that at the time of the accident she was sitting in the automobile with her baby in her lap and was watching the road; that as they approached the corner of Center Street she saw the other automobile come out of Center Street; that it came along without stopping until it was in front of her husband's automobile; that her husband was driving about twenty-five miles an hour, and when he saw the defendant's automobile he slowed down a little; that "he saw this car was right on top of him

and he turned the wheel trying to avoid hitting it" and after that she remembered nothing until some hours afterwards.

Ralph R. Stratton, called by the plaintiff, testified that he was walking on the turnpike in a southerly direction, and saw the defendant's automobile coming out of Center Street and going across the turnpike; that it came out slowly and stopped practically in the center of the lanes, one half on one lane and one half on the other, the front of the automobile being over on the right hand side of the road; that he saw the automobile in which the plaintiff was riding come to the corner, and if it went straight ahead it was bound to collide with the defendant's automobile, but it turned to go around it and apparently the right front wheel caught on the banking and it tipped over; that when the automobile in which the plaintiff was riding went past the witness the defendant was coming over the crown of the road and was about thirty or forty feet away and was directly in front of the automobile of the plaintiff's husband.

The defendant testified that as he came along Center Street to the turnpike he stopped at the stop sign, and then crept up to the cement, and was on the edge of the turnpike when he first saw the automobile of the plaintiff's husband which was coming in the middle of the road, and going "pretty fast," and when it was about two feet from the corner it "swung sharp to the right, then he came out again and shot right over to the banking and tipped over"; that if it had kept travelling in a straight line it would not have hit the defendant's automobile which at no time went onto the turnpike until the other automobile tipped over. One Severance, a witness called by the defendant, testified that he saw both vehicles and that the defendant stopped at the edge of the cement and did not start again before the accident occurred.

In view of the conflicting testimony it is plain that a verdict could not properly have been directed for the defendant. If the jury believed the testimony of the plaintiff, her husband and the witness Stratton, they could have found that the defendant ignored the stop sign at the corner of Center Street, and suddenly, without any previous signal or warn-

ing, entered upon the turnpike and stopped directly in the pathway of the approaching automobile, whose driver could not have avoided a collision except by turning to the right, and that in so doing the accident occurred; that if the defendant had obeyed the signal and stopped before entering the turnpike, the accident could have been avoided; and that the injuries sustained by the plaintiff were due to the negligence of the defendant. The action of the plaintiff's husband in quickly turning his automobile to the right and thereby avoiding a collision may have prevented a more serious accident. The fact that the defendant's automobile did not collide with that of the plaintiff's husband is immaterial, if, as could have been found, the accident was the result of negligence of the defendant. *Di Rienzo* v. *Goldfarb*, 257 Mass. 272, 281. The case is governed in principle by *White* v. *Calcutt*, 269 Mass. 252, 255, *Harrington* v. *Cudahy Packing Co.* 273 Mass. 15, *Clay* v. *Pope & Cottle Co.* 273 Mass. 40, 44, 45, *Golden* v. *Carnevale*, 273 Mass. 159, 161, *Minnehan* v. *Hiland*, 278 Mass. 518, 522, 523.

In accordance with the terms of the report the entry must be

*Judgment on the verdict.*